[ECF No. 69]

THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

| | |
|---|---|
| ALAN SPIEGEL, et al.,<br><br>        Plaintiffs,<br><br>    v.<br><br>GOLDIN AUCTIONS, LLC, et al.,<br><br>        Defendants. | Civil No. 23-1202 (KMW)(EAP) |

**OPINION**

This matter comes before the Court on Defendants Goldin Auctions, LLC's and Kenneth Goldin's ("Defendants") Motion seeking leave to amend their answer and to assert counterclaims. *See* ECF No. 69, Defendants' Motion ("Defs.' Motion"). Plaintiffs Alan Spiegel and Steven Spiegel ("Plaintiffs") oppose the motion. *See* ECF No. 70, Plaintiffs' Opposition ("Pls.' Opp."). Defendants filed a reply brief. *See* ECF No. 75, Defendants' Reply ("Defs.' Reply"). The Court has considered the parties' submissions and decides this matter without oral argument pursuant to Federal Rule of Civil Procedure 78 and Local Civil Rule 78.1. For the reasons that follow, Defendants' Motion to Amend their Answer and to Assert Counterclaims is **GRANTED**.

**STATEMENT OF FACTS**

Defendants' Motion arises out of a dispute between the parties involving the unsuccessful auction of a 2003-04 Upper Deck Exquisite Collection Lebron James Rookie Jersey Patch Autograph card with serial number 44/99 (the "Lebron RPA Card"). *See* ECF No. 1, Complaint ("Compl.") ¶¶ 56, 128. According to the Complaint, Plaintiffs are "collectors of high-end cards," which they collect for "personal enjoyment" as well as for "investment purposes." *Id.* ¶ 32. Defendant Goldin Auctions LLC is "an auction house" that advertises itself as "the leading

marketplace for trading cards, collectibles and memorabilia." *Id.* ¶ 34. Defendant Kenneth Goldin is the "founder, face, and an owner of [Goldin Auctions]." *Id.* ¶ 39.

**A.      Plaintiffs Purchase the Lebron RPA Card and Verify Authenticity**

In January 2014, Plaintiffs purchased the Lebron RPA Card from a local hobby shop in Brooklyn, New York. *Id.* ¶ 56. Sometime after purchasing the card, Plaintiffs listed it on eBay as a secondary seller to "[test] the market value for the card." *Id.* ¶ 59. Shortly thereafter, Plaintiffs received a message "concerning the patch[1] displayed in the patch window on the Lebron RPA Card." *Id.* ¶ 60. That message contained an image of the Lebron RPA Card with a white patch rather than the multi-colored patch which Plaintiffs' Lebron RPA Card had. *Id.* ¶ 61. This was the first time that Plaintiffs were ever confronted about the authenticity of their card. *Id.* Plaintiffs contacted the card's manufacturer, Upper Deck, "to determine whether the Lebron RPA Card indeed had its patch replaced after manufacture by someone other than Upper Deck." *Id.* ¶ 63. By letter dated October 16, 2019, Upper Deck's Senior Manager of Customer Experience at that time, Chris Carlin, informed Plaintiffs that the Lebron RPA Card was authentic. *Id.* ¶¶ 66-68; *see also* ECF No. 1-2, Exhibit A ("Upper Deck Letter").

After receiving the authentication letter, Plaintiffs brought the Lebron RPA Card and the letter to Beckett Grading Service ("BGS")[2] to have the card "re-holstered." *Id.* ¶ 70. BGS assigned a "grade of '9 – Mint'" to the card after reviewing the card and the letter. *Id.* ¶¶ 71-72. However, despite the Upper Deck Letter and BGS's review, Plaintiffs continued to receive several attacks on the Lebron RPA Card's authenticity from various internet and social media users. *See generally*

---

[1] Per the Complaint, patches are "swatches of material, often from a player-worn jersey, inside of a patch window that makes it viewable in the card design." Compl. ¶ 27. "[A] patch card is produced by using a thicker piece of dense cardboard or foamboard, cutting a 'window' in it into which the patch will fit . . . ." *Id.* ¶ 29.

[2] "[BGS] is a grading and authentication service that is highly regarded in the industry." Compl. ¶ 40.

2

*id.* ¶¶ 76-106. Specifically, Plaintiffs contend that various internet forum and social media users have used an altered picture to attack the authenticity of the Lebron RPA Card. *Id.* ¶¶ 76-78. Plaintiffs contend that the altered picture "contains unmistakable hallmarks of being altered . . . ." *Id.* ¶ 79. To date, however, Plaintiffs have not been able to determine the altered picture's source. *Id.* ¶¶ 76-77.

**B.     The Plaintiffs Contract with Defendants to Auction the Lebron RPA Card**

In late spring 2021, Defendants Goldin Auctions, LLC and Kenneth Goldin "approached the [Plaintiffs] to convince them to sell the Lebron RPA Card because the sports trading card market hit all-time highs and [Defendants] believed it 'would break records' with this card because it was graded so highly and was the only one that came with a letter from the manufacturer supporting its authenticity." *Id.* ¶ 107. Defendants "expressed familiarity with the Lebron RPA Card and the 'controversy' surrounding the Lebron RPA Card, but stated that [Defendants] 'had no concerns as to its authenticity' before the parties ever agreed that [Defendants] would sell the Lebron RPA Card." *Id.* ¶ 112. Prior to the auction, the parties communicated with each another regarding the Lebron RPA Card's authenticity. *Id.* ¶¶ 113-120. As part of this exchange, Plaintiffs provided the Upper Deck Letter to Defendants. *Id.* ¶ 116. Defendants contacted Upper Deck "to verify that the Upper Deck letter was issued by them and was not altered in any way." *Id.* Chris Carlin from Upper Deck confirmed that they had issued the letter and "even copied Upper Deck's CEO" in the communication confirming the letter. *Id.* ¶ 117. Thereafter, Plaintiffs granted Defendants permission to use the Upper Deck Letter in the auction listing. *Id.* ¶ 118.

**C.     The Lebron RPA Card Auction**

In June 2021, Plaintiffs "placed the Lebron RPA Card for auction" with Defendants, and the auction went live on June 10, 2021. *Id.* ¶¶ 110, 124. "[W]ithin 24 hours, bids for the Lebron

3

RPA Card had risen to $690,000.00." *Id.* ¶ 124.  The next day, however, Defendants withdrew the Lebron RPA Card from the auction, claiming that they faced pressure from internet and social media users to withdraw the card.  *Id.* ¶¶ 128-29.  Plaintiffs allege that one of these internet and social media users, Cardporn,[3] provided Defendants with a photoshopped image to attack the Lebron RPA Card's authenticity.  *Id.* ¶ 129.  Defendants also received "an alleged 'retraction' of the Upper Deck Letter" from Upper Deck, which Plaintiffs argue never occurred.  *Id.*

On June 14, 2021, Plaintiffs received an email from Defendant Goldin "passing along an 'offer for $1 million even'" for the card, as well as other statements explaining why they pulled the card from auction.  *Id.* ¶ 151; ECF No. 1-3, Ex. B, Emails.  Defendants informed Plaintiffs that the Lebron RPA Card was worth, "based on what the industry is discussing, under [$250,000.00] . . . ."  Compl., Ex. B at 1.  Defendants also received photos of the Lebron RPA Card with the white patch, as opposed to the multicolor patch on Plaintiffs' Lebron RPA Card, from "multiple hobby sources including [three] excellent clients of mine who do NOT know you and are not on social media . . . meaning they have no reason to try anything negative towards you and the card[.]"  *Id.*

Importantly, and most relevant to the present motion before the Court, Defendant Goldin also informed Plaintiffs that he spoke with Chris Carlin at Upper Deck, stating that:

> [T]he information [Chris Carlin] gave me the day before was incorrect.  He said the card would have been replaced in 2004, and it was 17 years ago and he has no memory of the patch that was put on it, and has no way of knowing if someone switched the patch

---

[3] Several internet and social medial users, such as Instagram user "Cardporn," feature prominently in Plaintiff's Complaint as well as in the relevant briefings related to Defendants' present motion.  Cardporn allegedly made posts on Instagram questioning the authenticity of the Lebron RPA Card.  *See, e.g.,* Compl. ¶¶ 93-100, 131, 135-138.  Plaintiffs assert that Defendants withdrew the Lebron RPA Card from auction because they were "facing too much pressure from Cardporn and its followers in the 'hobby' and was withdrawing it based on Cardporn allegedly 'calling' Upper Deck and convincing Upper Deck to retract the letter, which led to an alleged call from Upper Deck to [Defendants] 'retracting' the letter."  *Id.* ¶ 131.

> over a 17 year period and basically he overstated details in the [Upper Deck] letter.

*Id.* at 2.  Defendant Goldin further communicated that either the Upper Deck Letter was incorrect, or that the Upper Deck Letter was accurate and the photos used to attack the Lebron RPA Card's authenticity were photoshopped.  *Id.*  Defendant Goldin concluded that "based on the evidence I have seen," the Upper Deck Letter was incorrect.  *Id.*  As of the filing of the Complaint, Plaintiffs have not been able to sell the Lebron RPA Card.  Compl. ¶ 179.

## **PROCEDURAL HISTORY**

On March 1, 2023, Plaintiffs filed their Complaint, seeking damages for breach of fiduciary duty, Count One, ¶¶ 181-98; tortious interference with prospective economic advantage, Count Two, ¶¶ 199-212; fraud in the inducement, Count Three, ¶¶ 213-39; breach of the implied duty of good faith and fair dealing, Count Four, ¶¶ 240-51; and claims under the New Jersey Consumer Fraud Act, Count Four, ¶¶ 252-72.  On April 17, 2023, Defendants filed a motion to dismiss the Complaint.  *See* ECF No. 7.  After holding oral argument, the District Court denied Defendants' motion to dismiss.  *See* ECF No. 15, Order.

Thereafter, on December 20, 2023, the Court held an initial scheduling conference with the parties, at which time the Court set April 1, 2024, as the deadline to amend pleadings.  ECF No. 23, Scheduling Order, ¶ 7.  The Court did not grant any extensions to this deadline.  *See generally* Dkt. Sheet.  The parties proceeded with discovery and most recently conducted depositions of several fact witnesses, including nonparty Chris Carlin.  Defs.' Br. at 1, 4.

Defendants filed the present motion seeking leave to file an amended answer and to assert counterclaims against Plaintiffs.  *See* ECF No. 69, Defs.' Motion.  Defendants base their motion on information they recently discovered during depositions.  *See* Defs.' Br. at 1.  Plaintiffs timely

filed opposition. *See* ECF No. 70, Pls.' Opp.  Defendants then filed their reply. *See* ECF No. 75, Defs.' Reply.

Defendants allege that after recent discovery, they learned that Plaintiffs "*knew* that Upper Deck had significant doubts about the authenticity of the patch and *knew* that Upper Deck could not and would not authenticate the patch." Def.'s Br. at 1 (emphasis in original).  Defendants assert that Plaintiffs "chose to conceal this crucial information from Goldin when they consigned the Lebron RPA for auction.  In so doing, [Plaintiffs] fraudulently induced Goldin to auction the Lebron RPA and to enter into the parties' Consignment Agreement and then breached that same contract." *Id.*

Defendants seek leave to add an affirmative defense based on Plaintiffs' alleged prior material breach and to add counterclaims against Plaintiffs for fraudulent inducement and breach of contract. *Id.* at 2.  First, Defendants argue that there is good cause to modify the scheduling order and extend the deadline to amend pleadings under Federal Rule of Civil Procedure 16(b)(4) because Defendants did not learn of the information on which the amendments are based until after the deadline to amend. *Id.* at 6.  Second, relying on the motion for leave to amend standard under Federal Rule of Civil Procedure 15, Defendants argue that their amendments are not futile; there is no undue delay; they did not act in bad faith or with dilatory motive; and Plaintiffs would not be prejudiced by the proposed amendments. *Id.*

In opposition, Plaintiffs argue that Defendants cannot meet the good cause standard under Federal Rule of Civil Procedure 16(b)(4), involving modification of scheduling orders. Pls.' Opp. at 19.  Further, Plaintiffs argue that Defendants cannot meet the "more liberal standards" under Federal Rule of Civil Procedure 15(a)(2) because Defendants' proposed amendments are futile;

6

Defendants acted with undue delay, bad faith, or dilatory motives; and the proposed amendments would prejudice Plaintiffs.  *Id.* at 21-22.  The Court addresses each of these arguments in turn.

## DISCUSSION

"'The threshold issue in resolving a motion to amend is the determination of whether the motion is governed by Rule 15 or Rule 16 of the Federal Rules of Civil Procedure.'"  *Park v. Freehold Healthcare, LLC*., No. 18-11306, 2022 WL 19558164, at *1 (D.N.J. Feb. 15, 2022) (quoting *Karlo v. Pittsburgh Glass Works, LLC*, No. 10-1283, 2011 WL 5170445, at *2 (W.D. Pa. Oct. 31, 2011)).  "[W]hen a party moves to amend or add a party after the deadline in a district court's scheduling order has passed, the 'good cause' standard of Rule 16(b)(4) of the Federal Rules of Civil Procedure applies.  A party must meet this standard before a district court considers whether the party also meets Rule 15(a)'s more liberal standard."  *Premier Comp Solutions, LLC v. UPMC*, 970 F.3d 316, 319 (3d Cir. 2020) (footnote omitted).

Here, the time to file motions to amend pleadings or to join new parties expired on April 1, 2024.  *See* ECF No. 23, Initial Scheduling Order ("ISO") ¶ 7.  The Court did not grant any extensions.  *See generally* Dkt. Sheet.  Defendants filed their present motion on October 25, 2024.  *See* ECF No. 69.  Therefore, Defendants must satisfy the good cause standard under Rule 16(b)(4) before the Court considers whether they also satisfy the more liberal standards under Rule 15.

A. **Good Cause Under Federal Rule of Civil Procedure 16(b)(4)**

Federal Rule of Civil Procedure 16(b)(4) states in pertinent part that, "[a] schedule may be modified only for good cause and with the judge's consent."  Fed. R. Civ. P. 16(b)(4).  "[W]hether 'good cause' exists under Rule 16(b)(4) depends in part on a [party's] diligence."  *Premier Comp Solutions, LLC*, 970 F.3d at 319 (citing *Race Tires Am., Inc. v. Hoosier Racing Tire Corp.*, 614 F.3d 57, 84-85 (3d Cir. 2010)); *see also Banks v. City of Phila.*, 309 F.R.D. 287, 290 (2015) ("The

7

Rule 16(b)(4) good cause inquiry 'focuses on the diligence of the party seeking the modification of the scheduling order.'"(quotation omitted)). "In assessing diligence, the Court asks whether the movant possessed, or through the exercise of reasonable diligence should have possessed, the knowledge necessary to file the motion to amend before the deadline expired." *Womble v. Camden Cnty. Bd. of Comm'rs*, No. 23-3373, 2024 WL 5153169, at *3 (D.N.J. Dec. 18, 2024) (citing *Arzadi v. Evanston Ins. Co.*, No. 17-5470, 2021 WL 1712527, at *2 (D.N.J. Apr. 29, 2021)). "Good cause to amend a scheduling order may be found where the movant learns of the facts supporting the motion after expiration of the relevant filing deadline." *Id.* (cleaned up). "If a movant had the knowledge necessary to file a motion to amend prior to the expiration of the Court's deadline set forth in the scheduling order, and if the movant can provide no satisfactory explanation for the delay, the Court may, in its discretion, deny the motion." *Grasso v. Consol. Rail Corp.*, No. 12-398, 2013 WL 3167761, at *5 (D.N.J. June 20, 2013). Rule 16(b)(4), however, "does not require a party to exercise an advanced or superior level of diligence, but rather requires only reasonable diligence." *Tordella v. Cnty. of Cape May, Bd. of Chosen Freeholders*, No. 18-15101, 2021 WL 3562895, at *3 (D.N.J. Aug. 12, 2021) (citing *Sabatino v. Union Twp.*, No. 11-1656, 2013 WL 1622306, at *5 (D.N.J. Apr. 15, 2013)).

  Defendants argue that good cause under Rule 16(b)(4) is met here because their proposed amendments are based on facts discovered during nonparty Chris Carlin's September 12, 2024 deposition. Defs.' Br. at 7. Defendants assert that during the deposition, they "learned for the very first time that the Upper Deck letter authenticated only the card itself and that Upper Deck could not authenticate the patch inside of the card." *Id.* Mr. Carlin allegedly had "always" communicated concerns he had with the authenticity of the patch in the Lebron RPA Card since "all the way back in the fall of 2019." *Id.* These facts were not included in Plaintiffs' Complaint.

8

*Id.* Defendants assert that the information obtained during Mr. Carlin's deposition "forms the basis for Goldin's new affirmative defense for prior material breach and the counterclaims against the Spiegels for fraudulent inducement and breach of contract." *Id.*

Plaintiffs respond with two arguments. First, they assert that Defendants had "notice of their potential counterclaims when they received production of e-mails between Steven Spiegel and Chris Carlin" on February 26, 2024. Pls.' Opp. at 19. The Court disagrees.

Defendants admit that the emails were in their possession on February 26, 2024, *see* Defs. Reply at 2, but posit that those emails alone "do not include all the same information and details that were revealed in the September 12 deposition . . . ." Defs.' Br. at 8. In support of their argument, Defendants rely on *Terranova v. Cushman & Wakefield of New Jersey, LLC*, No. 21-17501, 2023 WL 7131808 (D.N.J. Oct. 30, 2023). There, the court held that even though the defendants had a relevant document in their possession prior to the expiration of the court-ordered deadline to amend pleadings, the defendants' affirmative counterclaims only became "viable" after a deposition. *Id.* at *3. The court noted that the moving party "acted in good faith by exercising a reasonable degree of due diligence in pursuing the factual underpinnings of its counterclaim before seeking to amend." *Id.*

Likewise here, Defendants' proposed affirmative defenses and counterclaims only became "viable" after Chris Carlin's deposition. Contrary to Plaintiffs' argument, the subject emails, *see* ECF No. 70-3, Exs. B, C, did not show that Upper Deck "always had significant doubts about the authenticity of the patch inside the Spiegels' Lebron RPA" or that the patch was something that Upper Deck could not validate for Plaintiffs. Defs.' Br. at 3. At most, those emails include only "a few stray and somewhat equivocal statements about the LeBron RPA." *Id.* at 8. The predicate

9

basis for the proposed affirmative defenses and counterclaims was not revealed until Carlin's deposition.

Second, Plaintiffs assert that Defendants had ample opportunity to discover the necessary facts when Defendants served their initial disclosures. Pls.' Opp. at 20. Plaintiffs contend that at that time, Defendants' prior counsel identified Chris Carlin as a person with knowledge of the facts of this case,[4] and therefore, they could have "picked up the phone and asked" Mr. Carlin about his communications with Plaintiffs. Pls.' Opp. at 20-21.

Defendants, however, point out that Mr. Carlin has been independently represented by counsel since at least February 2024, when the emails in question were first disclosed during fact discovery. Defs.' Reply at 5. Defendants concede that they knew Mr. Carlin likely possessed relevant knowledge when they first issued their initial disclosures. *Id.* But Defendants emphasize that, at that time, they represented only that Mr. Carlin "may have discoverable information that [Defendants] may use to support its defenses, []not to support counterclaims against [Plaintiffs]." *Id.* (cleaned up). Further, by the time Plaintiffs produced the emails in question, Mr. Carlin was represented by independent counsel. *Id.* As such, upon receiving the emails, Defendants would not have been able to simply call Mr. Carlin as Plaintiffs suggest. Importantly, Defendants also note that by that time, they had already issued a subpoena to Mr. Carlin and it was "entirely reasonable for Goldin to participate in and let the non-party discovery process play out at that point." Defs.' Reply at 5. The Court agrees.

Therefore, the Court finds that Defendants exercised reasonable diligence under Rule 16(b)(4) by not filing a motion to amend their complaint until after they conducted Mr. Carlin's

---

[4] The Court notes that Defendants had not yet retained their current counsel when they produced their initial disclosures. *See* Pls.' Opp. at 20 ("Those disclosures were prepared and served by Edward J. Henry, Esquire, who was representing the Defendants at the time.").

deposition, which revealed the information upon which their proposed affirmative defense and counterclaims are based.

**B.      Good Cause Under Federal Rule of Civil Procedure 15(a)(2)**

The inquiry does not end at this juncture because Defendants must establish that their proposed amendment meets the more liberal standards of Federal Rule of Civil Procedure 15(a)(2). Rule 15 governs amendments to pleadings before trial.  *See* Fed. R. Civ. P. 15.  A party may amend its pleading once as a matter of course within 21 days after serving it, or if the pleading is one to which a responsive pleading is required, the earlier of 21 days after service of a responsive pleading or 21 days after a motion under Rule 12(b), (e), or (f).  Fed. R. Civ. P. 15(a)(1).  If those deadlines have expired, a party may amend its pleading only with the opposing party's written consent or the court's leave.  Fed. R. Civ. P. 15(a)(2).

The Third Circuit has adopted a liberal approach to the amendment of pleadings.  *Spartan Concrete Prods., LLC v. Argos USVI, Corp.*, 929 F.3d 107, 115 (3d Cir. 2019); *see also Donovan v. W.R. Berkley Corp.*, 566 F. Supp. 3d 224, 229 (D.N.J. 2021) ("Generally, there is a presumption in allowing the moving party to amend its pleadings.").  However, the Court may deny a motion for leave to amend in one of four instances: (1) the amendment would be futile; (2) the moving party has demonstrated undue delay, bad faith, or dilatory motives; (3) the amendment would prejudice the non-moving party; or (4) the moving party was put on notice of deficiencies in its pleading but chose not to resolve them.  *U.S. ex rel. Schumann v. AstraZeneca Pharms. L.P.*, 769 F.3d 837, 849 (3d Cir. 2014).  Ultimately, the decision of whether to grant leave to amend is within the sound discretion of the Court.  *Arab Afr. Int'l Bank v. Epstein*, 10 F.3d 168, 174 (3d Cir. 1993). The Court remains mindful that it "should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2).

In opposing Defendants' proposed amended answer and counterclaims, Plaintiffs contend that (1) Defendants' proposed amendment is futile; (2) Defendants have unduly delayed in seeking leave; and (3) Plaintiffs would be prejudiced by the amendments. The Court addresses each argument in turn.

### 1. Futility

"Futility" means that the complaint, as amended, would fail to state a claim upon which relief could be granted. *Shane v. Fauver*, 213 F.3d 113, 115 (3d Cir. 2000). Accordingly, the futility of an amended complaint is governed by the same standards of legal sufficiency as a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). *Travelers Indem. Co. v. Dammann & Co.*, 594 F.3d 238, 243 (3d Cir. 2010). Under these standards, a court must accept all factual allegations in a proposed amended complaint as true and view them in the light most favorable to the plaintiff. *Doe v. Princeton Univ.*, 30 F.4th 335, 340 (3d Cir. 2022). Although a complaint need not contain detailed factual allegations, "a plaintiff's obligation to provide the grounds of his entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal quotations omitted). Moreover, a complaint must contain sufficient factual matter to state a claim to relief that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. As such, "the trial court may properly deny leave to amend where the amendment would not withstand a motion to dismiss." *Massarsky v. Gen. Motors Corp.*, 706 F.2d 111, 125 (3d Cir. 1983).

Here, Defendants seek to add counterclaims of fraudulent inducement and breach of contract. Plaintiffs argue that Defendant Goldin's own deposition testimony taken after Mr.

Carlin's deposition defeats Defendants' stated basis for the amendment because Goldin characterized the Spiegels as victims in this matter. Pls.' Opp. at 22. Plaintiffs further argue that because Defendants' testimony contradicts Carlin's testimony, Defendants cannot rely on Carlin's testimony to support their proposed claims. Plaintiffs also direct the Court's attention to other statements made by the Goldins throughout this litigation that suggest Defendants benefitted from the alleged contract breach. *Id.*

Evidentiary questions such as the credibility of witnesses are not a permissible basis for a futility argument in opposition to a motion to amend. That is the role of the factfinder at the appropriate stage of the case. To be sure, the Court's role at this juncture to assess futility by determining whether Defendants have stated a claim for relief that is plausible on its face. *See S.M. ex rel. B.M. v. Freehold Reg'l High Sch. Dist. Bd. of Educ.*, No. 22-107, 2022 WL 4226354, at *3 (D.N.J. Sep. 13, 2022) (noting that futility arguments are "better suited for consideration in the context of a motion to dismiss or for summary judgment" (cleaned up)); *Colombo v. Bd. of Educ. for the Clifton Sch. Dist.*, No. 11-785, 2016 WL 6403081, at *2 (D.N.J. Oct. 27, 2016) (noting the court's discretion not to consider futility arguments because they are best left to a future motion to dismiss).

The Court finds that Plaintiffs have not met their burden of demonstrating futility. The record in this matter is well-developed. Defendants have addressed how each element in their two counterclaims is met and have identified the facts already in the record that support these amendments. *See* Defs.' Br. at 10-12. While Plaintiffs' arguments ultimately may have some validity, they are premature at this stage of litigation and are better suited for resolution by a factfinder. Accordingly, the Court concludes that Defendants' proposed amendments are not futile.

### 2. Bad Faith, Undue Delay, Dilatory Motive

"The question of undue delay, as well as the question of bad faith, requires that [courts] focus on the [moving party's] motives for not amending their complaint to assert this claim earlier." *Adams v. Gould Inc.*, 739 F.2d 858, 868 (1984). In general, "[d]elay alone, without more, is typically not enough to justify denying a motion to amend." *Freeman v. McDonnell*, No. 18-7802, 2021 WL 395875, at *4 (D.N.J. Feb. 4, 2021) (citing *Adams*, 739 F.2d at 868). However, the moving party "must demonstrate that its delay in seeking to amend is satisfactorily explained." *Korrow v. Aaron's, Inc.*, 300 F.R.D. 215, 219 (D.N.J. 2014).

In an effort to establish bad faith and undue delay, Plaintiffs point to Goldin's testimony in which he identified Plaintiffs as the "innocent victims" in this matter. Pls.' Opp. at 24. Further, Plaintiffs note that Goldin Auctions' "improved . . . standing among hobby participants because of the auction withdrawal" should give the Court "some pause as to whether the proposed counterclaim is raised in bad faith." *Id.* Plaintiffs argue that the timing of Defendants' motion, along with its "questionable merit," would permit "one [to] draw the conclusion that the proposed counterclaim" is being brought when the parties are confronted with various discovery deadlines. *See id.*

Without additional evidence suggesting otherwise, the Court will not infer that Defendants' motion is made in bad faith. *See Adams*, 739 F.2d at 868 (noting that in the absence of any extrinsic evidence or evidence in the record, the court will not find that the moving party engaged in bad faith). Similarly, Defendants have not established that Plaintiffs have acted with undue delay. Indeed, Defendants have explained in detail the reasons why they did not file the present motion until after the deadline in the Court's scheduling order, noting that they wanted to discuss the possibility of a settlement conference and wait until the parties completed the court-ordered

depositions of four "key witnesses." Defs.' Br. at 13. Therefore, the Court finds that Defendants did not act in bad faith, with undue delay, or with dilatory motive in seeking leave to amend their answer until after depositions.

### 3. Undue Prejudice

"Undue prejudice is the touchstone for the denial of leave to amend." *Harrison Beverage Co. v. Dribeck Imps., Inc.*, 133 F.R.D. 463, 468 (D.N.J. 1998) (cleaned up). "The issue of prejudice requires that [the court] focus on the hardship to the defendants if the amendment were permitted." *Cureton v. Nat'l Collegiate Athletic Ass'n*, 252 F.3d 267, 273 (3d Cir. 2001) (citing *Adams*, 739 F.2d at 868). "[P]rejudice must be 'undue' and rise to such a level that the non-moving party would be 'unfairly disadvantaged or deprived of the opportunity to present facts or evidence.'" *Korrow*, 300 F.R.D. at 219 (quoting *Harrison*, 133 F.R.D. at 468.). "Specifically, [courts] have considered whether allowing an amendment would result in additional discovery, cost, and preparation to defend against new facts or new theories." *Cureton*, 252 F.3d at 273. However, "[t]he burden is on the nonmoving party to establish prejudice and the burden is high." *In re Wellbutrin XL Antitrust Litig.*, 756 F.Supp.2d 670, 681 (E.D. Pa. 2010). "The nonmoving party has a heavier burden than merely claiming prejudice, it must show that an unfair disadvantage or deprivation will result by allowing the amendment." *Id.* (citing *Heyl & Patterson Int'l, Inc. v. F.D. Rich Hous., Inc. of V.I.*, 663 F.2d 419, 426 (3d Cir. 1981)).

Here, Plaintiffs claim prejudice based on the fact that—as of the date of its brief—only three months remained before the end of fact discovery with at least five depositions left to be scheduled. Pls.' Opp. at 24. They assert that allowing Defendants to file an amended answer and new counterclaims will require additional fact and expert discovery on issues relating to Defendants' claimed damages. *Id.* at 24-25. Plaintiffs argue that "[t]hese additional efforts involve

15

substantial cost and additional discovery that will not fit into the remaining two-and-a-half month discovery period in this case." *Id.* at 26.

While Plaintiffs' arguments are not unfounded, the Court finds that merely requiring additional discovery does not rise to the level of undue prejudice. Indeed, the Court agrees that requiring Plaintiffs to fit all new and remaining discovery within the time remaining for fact discovery would be prejudicial. This matter, however, is still in discovery. Trial has not yet been scheduled, and no judgment has been entered in this matter. The Court also finds that Plaintiff's ability to pursue their own claims and defend against Defendants' counterclaims would not be "seriously impaired" if the Court granted amendment. *See Dole v. Arco Chem. Co.*, 921 F.2d 484, 488 (3d Cir. 1990) (noting that nonmoving party must demonstrate that "its ability to present its case would be seriously impaired were amendment allowed") (citing *Bechtel v. Robinson*, 886 F.2d 644, 652 (3d. Cir. 1989)). Finally, the Court can alleviate any prejudice Plaintiffs may suffer by extending the fact discovery deadline to permit additional discovery and to allow additional time for expert reports. *See Dole*, 921 F.2d at 488 (3d Cir. 1990) ("[T]he need for additional discovery does not conclusively establish prejudice.") (citing *Butcher & Singer v. Kellam*, 105 F.R.D. 450, 452-53 (D. Del. 1984)). Because any collateral effects of the amendment can be resolved, the Court finds that Plaintiffs have not established undue prejudice.

## CONCLUSION

For the foregoing reasons, Defendants' motion seeking leave to amend their answer and assert counterclaims is **GRANTED**. An appropriate Order follows.

s/Elizabeth A. Pascal<br>
ELIZABETH A. PASCAL<br>
United States Magistrate Judge

cc:  Hon. Karen M. Williams, U.S.D.J.