[ECF No. 87]

THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

| | |
|---|---|
| ALAN SPIEGEL, et al., <br><br> Plaintiffs, <br><br> v. <br><br> GOLDIN AUCTIONS, LLC, et al., <br><br> Defendants. | Civil No. 23-1202 (KMW)(EAP) |

**OPINION**

This matter comes before the Court on Plaintiffs Alan and Steven Spiegel's ("Plaintiffs") Motion for Sanctions Due to Spoliation of Evidence. ECF No. 87 (Pls.' Mot.). Defendants Kenneth Goldin and Goldin Auctions, LLC ("Defendants") filed opposition to the motion, ECF No. 91 (Defs.' Opp.), and Plaintiffs filed a reply, ECF No. 93 (Pls.' Reply). The Court has considered the parties' submissions and decides this matter without oral argument pursuant to Federal Rule of Civil Procedure 78 and Local Civil Rule 78.1. For the reasons that follow, Plaintiffs' Motion is **DENIED**.

**FACTUAL BACKGROUND**

A.   **Facts Giving Rise to the Lawsuit**

The Court incorporates by reference the factual history in the Court's May 6, 2025 Opinion, ECF No. 94 (Op.) at 1-5, and summarizes only those facts pertinent and necessary to resolve Plaintiffs' pending Motion.

Plaintiffs are collectors of high-end sports cards and the owners of a 2003-04 Upper Deck Exquisite Collection Lebron James Rookie Jersey Patch Autograph card with serial number 44/99 ("Lebron RPA Card" or "the Card"). ECF No. 1 (Compl.) ¶¶ 1-2, 32, 56. Defendant Goldin

Auctions, LLC sells sports trading cards for auction. *See id.* ¶¶ 34-38. Defendant Kenneth Goldin is the founder and an owner of Goldin Auctions. *Id.* ¶ 39. Non-party Upper Deck is the manufacturer of the card. *Id.* ¶¶ 48, 56, 63. Non-party "Cardporn" is another online hobby participant who "often makes posts that question the authenticity of cards or the business practices of individuals and companies involved in the sports trading card market." *Id.* ¶¶ 50-51.

This litigation centers on Defendants' decision to withdraw Plaintiffs' card from their auction. In June 2021, the parties entered into an agreement for Defendants to auction Plaintiffs' Lebron RPA Card. *Id.* ¶¶ 107-10. Prior to the auction, the parties exchanged text messages to address concerns about the card's authenticity, and Plaintiffs provided Defendants with a letter issued by Upper Deck verifying the authenticity of the card (the "Upper Deck Letter"). *Id.* ¶¶ 66, 112-15 & Ex. A. Defendants reached out to Upper Deck to verify the Upper Deck Letter, and Upper Deck confirmed its validity. *Id.* ¶¶ 116-17.

On June 10, 2021, Defendants listed the Lebron RPA Card for auction. *Id.* ¶ 124. Within twenty-four hours, bids rose to $690,000.00. *Id.* According to the Complaint, on June 11, 2021, Defendant Goldin "[i]nexplicably" withdrew the card from auction. *Id.* ¶ 128. Plaintiffs allege Defendant Goldin told them "he was facing too much pressure from Cardporn and its followers," and was "withdrawing [the Card] based on Cardporn allegedly 'calling' Upper Deck and convincing Upper Deck to retract the letter, which led to an alleged call from Upper Deck to Goldin 'retracting' the letter." *Id.* ¶ 131. Plaintiffs posit that Defendant Goldin improperly relied on Cardporn in its decision to withdraw the card, *id.* ¶ 139, and that Defendant Goldin told them he had obtained "'new' photos" from other hobby members that further supported his decision to withdraw the card, *id.* ¶¶ 145, 151, 153.

2

In contrast to Plaintiffs' allegations, Defendants assert that they withdrew the card from auction because Upper Deck "'retracted'" its previous support for the card's authenticity, and Defendants deny that any online users influenced their decision to withdraw the card. ECF No. 7-3 (Defs.' Br. in Supp. of Mot. to Dismiss) at 6-7; *see also* ECF No. 36 (Answer) ¶ 131 ("Defendants admit that Goldin Auctions withdrew the auction based on Upper Deck's retraction of its letter dated October 16, 2019" and "deny the remaining allegations").

B.    **Procedural Background Related to the Present Spoliation Motion**

On March 1, 2023, Plaintiffs filed their Complaint, seeking damages for breach of fiduciary duty (Count One), *id.* ¶¶ 181-98; tortious interference with prospective economic advantage (Count Two), *id.* ¶¶ 199-212; fraud in the inducement (Count Three), *id.* ¶¶ 213-39; breach of the implied duty of good faith and fair dealing (Count Four), *id.* ¶¶ 240-51; and claims under the New Jersey Consumer Fraud Act (Count Five),[1] *id.* ¶¶ 252-72.

As this case proceeded into discovery, several discovery disputes arose. Plaintiffs repeatedly asserted that two groups of electronic communications existed but had not been properly produced by Defendants: (1) communications between Mr. Goldin and Cardporn between June 9, 2021, and June 13, 2021, allegedly regarding the authenticity of the card; and (2) communications between Mr. Goldin and other online hobby members, who allegedly shared conflicting photographs of the card that questioned its authenticity. *See* ECF No. 41 (Pls.' Feb. 29, 2024 Disc. Dispute Ltr.); ECF No. 53 (Pls.' May 20, 2024 Disc. Dispute Ltr.); ECF No. 77 (Pls.' Jan. 24, 2025 Disc. Dispute Ltr).

On January 24, 2025, following resolution of several other discovery disputes, Plaintiffs filed a letter highlighting a continued "gap in production" in Defendants' discovery responses

---

[1] The Complaint mistakenly numbers this claim as "Count Four." The Court will refer to it as "Count 5" for purposes of this Opinion.

3

concerning these two categories of communications. ECF No. 77 (Pl.'s Jan. 24, 2025 Ltr.) at 4. Specifically, Plaintiffs asserted that "Goldin stated that he had Steven Spiegel's private messages with Cardporn"; that "Goldin *must* have received Spiegel's private messages with Cardporn via e-mail, text message, or private message from Cardporn"; and that "[n]o such communications . . . were produced." *Id.* (emphasis in original). Plaintiffs also asserted that "Goldin claimed in writing to Steven Spiegel that he received communications and photographs ('from multiple hobby sources including 3 excellent clients of mine who do NOT know you and are not on social media') at the time of the auction withdrawal concerning both the Spiegels and the Spiegels' LeBron RPA Card" but that "Goldin has not produced those communications or all versions of the photographs." *Id.* at 4-5.

The Court scheduled an on-the-record discovery dispute conference and directed Defendants to respond to Plaintiffs' letter. ECF No. 78 (Text Order). In their response, Defendants objected to Plaintiffs' allegations that Defendants engaged in spoliation of evidence. *See* ECF No. 79 (Defs.' Jan. 29, 2025 Ltr.) at 3.

On January 31, 2025, after hearing arguments from the parties, the Court granted Plaintiffs' request to compel the production of messages between Defendant Kenneth Goldin and non-party Cardporn, to the extent that undisclosed messages existed, but denied their request for leave to file a motion for sanctions for spoliation as premature.[2] *See* ECF No. 83 (Jan. 31, 2025 Disc. Dispute Order) ¶ 4.

On March 4, 2025, Plaintiffs renewed their request for leave to file a motion for sanctions. *See* ECF No. 85 (Pls.' Mar. 4, 2025 Ltr.). Plaintiffs asserted that following the Court's January

---

[2] The Court's January 31, 2025 Order incorrectly identified the relevant date range for the requested communications as June 19, 2023 to June 23, 2023. *See* Jan. 31, 2025 Disc. Dispute Order ¶ 4.a. The parties correctly identified the relevant date range as being June 9, 2021, to June 13, 2021. *See* ECF No. 85 (Pls.' Mar. 4, 2025 Ltr. at 1).

31, 2025 Discovery Dispute Order, counsel for Defendants represented that "the only communications between Ken Goldin and Cardporn that Defendants can produce during the period of June 9-13, 2021" were already produced in discovery. *Id.* at 1. Plaintiffs further explained that other evidence adduced in discovery shows that the communications existed and must have been spoliated. *Id.* at 3. They added that other communications and photographs previously sought also had not been produced. *Id.*

On March 14, 2025, the Court granted Plaintiffs leave to file the present Motion. ECF No. 86 (Text Order). On March 28, 2025, Plaintiffs timely filed their motion. Defendants filed opposition to the motion, and Plaintiffs filed a reply. The Motion is fully briefed and ripe for decision.

## DISCUSSION

Plaintiffs seek sanctions for the alleged spoliation of the same two categories of communications described above: (1) communications between Mr. Goldin and Cardporn from June 9 to June 13, 2021; and (2) communications from or regarding the "3 excellent clients" Mr. Goldin had previously mentioned via email, who allegedly shared or discussed conflicting photographs of the card that questioned its authenticity. Pls.' Mot. at 1-2. Plaintiffs argue that "[s]everal documents produced in the case prove the existence of other responsive documents existed at one point but have either been destroyed or concealed." *Id.* at 10, ¶ 53. Specifically, Plaintiffs argue that (1) an email from Mr. Goldin and additional discovery prove that Mr. Goldin received copies of communications between Cardporn and Steven Spiegel from Cardporn, *id.* at 16-18; and (2) Defendants' responses to discovery requests and Plaintiffs' investigation of produced image metadata prove Defendants received the image (and possibly others) from

5

Cardporn and/or other hobby members but failed to produce any such communications. *Id.* at 18-20.

In response, Defendants argue that Plaintiffs' argument fails for six independent reasons: (1) the existence of the evidence is premised on mere speculation, *see* Defs.' Opp. at 2-3; (2) even if those communications had existed, Defendants were under no duty to preserve them because litigation was not then reasonably foreseeable, *id.* at 3; (3) Mr. Goldin did not fail to take reasonable steps to preserve the subject communications, *id.* at 3-4; (4) Plaintiffs failed to show the alleged spoliated communications cannot be restored or replaced, *id.* at 4-5; (5) Plaintiffs cannot show prejudice of any alleged spoliated communications, *id.* at 5; and (6) Plaintiffs cannot show an intent to deprive them of this evidence in order to garner more severe sanctions, *id.* at 5-6. Defendants reaffirm that the evidence shows that Upper Deck called Mr. Goldin to express its concern over the card's authenticity and "that was 'the reason why the card was pulled' from the auction[.]" *Id.* at 7 (quoting ECF No. 91-1, Ex. 1 (Kenneth Goldin Dep. Tr.) at 213:22-214:1).

A.      **Legal Standard for a Spoliation Analysis**

"Spoliation is the destruction or significant alteration of evidence, or the failure to preserve property for another's use as evidence in pending or reasonably for[e]seeable litigation." *Mosaid Techs. Inc. v. Samsung Elecs. Co., Ltd.*, 348 F. Supp. 2d 332, 335 (D.N.J. 2004) (internal quotations omitted). A court may impose sanctions if evidence shows that spoliation occurred. *Id.* The moving party must prove that the spoliated evidence exists or existed prior to the alleged spoliation. *See Omogbehin v. Cino*, 485 F. App'x 606, 610 (3d Cir. 2012). Courts then conduct a two-step inquiry to determine whether sanctions for spoliation of evidence are appropriate. *Lucia v. McClain & Co., Inc.*, No. 11-930, 2013 WL 4517976, at *8 (D.N.J. Aug. 23, 2013). First, the

Court asks whether spoliation occurred. *Id.* Second, the Court considers what sanctions are available. *Id.* (citing *Bull v. United Parcel Serv., Inc.*, 665 F.3d 68, 73 n.5 (3d Cir. 2012)).

Under the first step of the inquiry, where the alleged spoliation involves electronically-stored information (ESI), courts in the Third Circuit apply the standards set forth in Federal Rule of Civil Procedure 37(e). *See Orbay v. Harrah's Atl. City Operating Co., LLC*, No. 22-935, 2025 WL 1343094, at *2 (D.N.J. Apr. 11, 2025) (noting that "'it appears that Rule 37(e) exclusively governs the spoliation inquiry'") (quoting *Bistrian v. Levi*, 448 F. Supp. 3d 454, 465 n.14 (E.D. Pa. 2020)). Under Rule 37(e), to establish spoliation

> [T]he moving party must show that: (i) certain ESI should have been preserved in anticipation or conduct of litigation; (ii) the ESI was lost; (iii) the ESI was lost because the party against which sanctions are sought failed to take reasonable steps to preserve it; and (iv) the ESI cannot be restored or replaced.

*Id.* at *2 (quoting *Profit Point Tax Techs., Inc. v. DPAD Grp.*, No. 19-698, 2023 WL 11968310, at *2 (W.D. Pa. Apr. 26, 2023)).

Under the second step, once a court concludes that spoliation has occurred, the court "may in its discretion issue sanctions[.]" *Manning v. Safelite Fulfillment, Inc.*, No. 17-2824, 2021 WL 3557582, at *7 (D.N.J. Apr. 29, 2021). Notably, the sanctions analysis remains separate from any analysis regarding whether spoliation occurred. *Omogbehin*, 485 F. App'x at 610; *see also Bull*, 655 F.3d at 73 n.5. To determine whether and what kind of sanctions should be imposed, a court must use the framework set forth in Federal Rule of Civil Procedure 37(e).[3] *Bistrian*, 448 F. Supp. 3d at 466.

---

[3] "Although the Third Circuit has not specifically clarified this issue, it appears that Rule 37(e) exclusively governs the spoliation inquiry, while both Rule 37(e) and the Third Circuit's own three-factor test govern the sanctions inquiry." *Contour Data Sols. LLC v. Gridforce Energy Mgmt. LLC*, No. 20-3241, 2021 WL 5541787, at *3 n.31 (E.D. Pa. Jan. 19, 2021) (citing *GN Netcom, Inc. v. Plantronics, Inc.*, 930 F.3d 76, 82 (3d Cir. 2019)); *see also Martin v. Wetzel*, No. 18-215, 2020 WL 6948982, at *2 (W.D. Pa. Nov. 25, 2020) (finding that in the Third Circuit, Rule

Rule 37(e) "gives courts authority to address a party's failure to preserve evidence, 'foreclos[ing] reliance on inherent authority or state law to determine when certain measures should be used.'" *Am. Inst. for Chartered Prop. Cas. Underwriters v. Posner*, No. 23-3251, 2025 WL 48332, at *3 n.12 (3d Cir. Jan. 8, 2025) (quoting Fed. R. Civ. P. 37(e)(2) advisory committee's note to 2015 amendment) (alteration in original)).  The Rule states in pertinent part:

> (e) Failure to Preserve Electronically Stored Information.  If electronically stored information that should have been preserved in the anticipation or conduct of litigation is lost because a party failed to take reasonable steps to preserve it, and it cannot be restored or replaced through additional discovery, the court:
>
> > (1) upon finding prejudice to another party from loss of the information, may order measures no greater than necessary to cure the prejudice; or
> >
> > (2) only upon finding that the party acted with the intent to deprive another party of the information's use in the litigation may:
> >
> > > (A) presume that the lost information was unfavorable to the party;
> > >
> > > (B) instruct the jury that it may or must presume the information was unfavorable to the party; or
> > >
> > > (C) dismiss the action or enter default judgment.

Fed. R. Civ. P. 37(e).  "[A] court may resort to (e)(1) measures only 'upon finding prejudice to another party from the loss of the information.'" Fed. R. Civ. P. 37 advisory committee's note to 2015 amendment (internal quotations omitted); *see also Manning*, 2021 WL 3557582, at *5 (discussing same).  Subdivision (e)(2) does not contain a prejudice requirement, but it does

---

37 provides a uniform standard and exclusive remedy for sanctions relating to the loss of electronically stored information (citations omitted)).

mandate that the moving party show that the spoliating party "acted with the intent to deprive another party of the information's use in the litigation." Fed. R. Civ. P. 37(e)(2).

In determining whether sanctions are appropriate and what sanctions to impose, courts also consider several factors enumerated by the Third Circuit:

> (1) the degree of fault of the party who altered or destroyed the evidence; (2) the degree of prejudice suffered by the opposing party; and (3) whether there is a lesser sanction that will avoid substantial unfairness to the opposing party, and, where the offending party is seriously at fault, will serve to deter such conduct by others in the future.

*Bull*, 665 F.3d at 74 n.5 (quoting *Schmid v. Milwaukee Elec. Tool Corp.*, 13 F.3d 76, 79 (3d Cir. 1994)); *see also Mosaid*, 348 F. Supp. 2d at 335 ("Sanctions are appropriate when there is evidence that a party's spoliation of evidence threatens the integrity of this Court.").

The Third Circuit has instructed courts to exercise discretion in imposing sanctions and to choose "the least onerous sanction corresponding to the willfulness of the destructive act and the prejudice suffered by the victim." *GN Netcom, Inc. v. Plantronics, Inc.*, 930 F.3d 76, 84 (3d Cir. 2019) (quoting *Schmid*, 13 F.3d at 80 (further quotations omitted)). The burden of proving the appropriate sanctions rests with the moving party. *See Goldrich v. City of Jersey City*, No. 15-885, 2018 WL 4492931, at *7 (D.N.J. July 25, 2018). Where the party seeking sanctions fails to establish the applicability of either subdivision of Rule 37(e), a court may decline to impose sanctions, even if it finds that spoliation occurred. *See, e.g.*, *Martin v. Wetzel*, No. 18-215, 2020 WL 6948982, at *2 (W.D. Pa. Nov. 25, 2020) (holding that although spoliation occurred, sanctions were "unwarranted and inappropriate" under the circumstances); *Eisenband v. Pine Belt Auto., Inc.*, No. 17-8549, 2020 WL 1486045, at *9 n.11 (D.N.J. Mar. 27, 2020) (holding that even if the defendant had custody or control of the allegedly spoliated software, the plaintiff had failed to demonstrate prejudice "as is required to impose sanctions under Rule 37(e)"); *Garcia v. Vitus*

9

*Energy, LLC*, 600 F. Supp. 3d 975, 987 (D. Alaska 2022) (finding sanctions inappropriate despite a determination that spoliation occurred); *see also U.S. for Use of Colo. Custom Rock Corp. v. G&C Fab-Con, LLC*, No. 20-2968, 2023 WL 3212516, at *6 (D.N.J. May 2, 2023) ("Having found that spoliation[] has occurred, the [c]ourt must now determine the appropriate sanction, if any." (emphasis added)).

**B.     Analysis**

Guided by this framework, the Court now addresses Plaintiffs' spoliation motion. In doing so, however, the Court need not engage in an analysis of whether the evidence existed or whether spoliation occurred because Plaintiffs have failed to make a showing sufficient to obtain sanctions under either subdivision of Rule 37(e). Accordingly, the Court focuses its analysis solely on the sanctions question.

1.     Rule 37(e)(1) Sanctions

As noted above, where spoliation of ESI occurs, Rule 37(e)(1) permits the imposition of sanctions "upon finding prejudice to another party from loss of the information[.]" Fed. R. Civ. P. 37(e)(1). Sanctions available under Rule 37(e)(1) should be "'no greater than necessary to cure the prejudice'" and "'include: forbidding the party that failed to preserve information from putting on certain evidence, permitting the parties to present evidence and argument to the jury regarding the loss of information, or giving the jury instructions to assist in its evaluation of such evidence or argument, other than instructions to which subdivision (e)(2) applies.'" *Goldrich*, 2018 WL 4492931, at *11 (quoting Fed. R. Civ. P. 37(e)(1) and advisory committee's note to 2015 amendment). Where a party seeks sanctions under Rule 37(e)(1), "[a] court may resort to (e)(1) measures only upon finding prejudice to another party from loss of the information." *Manning*, 2021 WL 3557582, at *5 (citation omitted). "When a party moving for spoliation sanctions cannot

10

offer 'plausible, concrete suggestions as to what [the lost] evidence might have been,' there should be no finding of prejudice." *GN Netcom, Inc.*, 930 F.3d at 83 (quoting *Schmid*, 13 F.3d at 80). An evaluation of prejudice from the loss of information must also include "an evaluation of the information's importance in the litigation." *Manning*, 2021 WL 3557582, at *7 (quoting Fed. R. Civ. P. 37 advisory committee's note to 2015 amendment). The moving party must demonstrate that "its ability to prepare effectively a full and complete trial strategy has been impeded" because of the spoliation. *Id.* at *7 (citing *Medeva Pharma Suisse A.G. v. Roxane Lab'ys, Inc.*, No. 07-5165, 2011 WL 310697, at *14 (D.N.J. Jan. 28, 2011)). Mere speculation is insufficient for a finding of prejudice. *Two Canoes LLC v. Addian Inc.*, No. 21-19729, 2024 WL 2939178, at *9 (D.N.J. Apr. 30, 2024) (citing *Eisenband*, 2020 WL 1486045, at *9).

Applying these standards, the Court finds that Plaintiffs have not demonstrated prejudice resulting from the alleged loss, deletion, or withholding of the ESI. Plaintiffs assert that the spoliated evidence "tell[s the] story" of why Defendants withdrew the Lebron RPA Card from auction despite expressing their support and belief in the authenticity of the Lebron RPA card. Pls.' Mot. at 17. Plaintiffs argue that they are unable to "fully investigate the circumstances surrounding the withdrawal of their card" because of spoliation. *Id.* at 20. Plaintiffs further argue that the spoliated communications "[are] critical to establishing what information Goldin possessed at the time of auction withdrawal." *Id.* at 14, ¶ 74 (emphasis omitted).

But Plaintiffs' repeated exhortations that the alleged communications remain critical for why Defendants withdrew the Lebron RPA Card are unpersuasive when considered in the context of this case and the existing evidence. The record reveals that Plaintiffs have ample evidence—beyond the alleged spoliated communications—upon which to establish what information Kenneth Goldin possessed and why he decided to withdraw the card. Plaintiffs claim that the spoliated

11

evidence would likely have shown that Kenneth Goldin "was fully aware that any change in position by Upper Deck was caused by Cardporn" and that "the key to Goldin's withdrawal was the information harped on by Cardporn[.]" Pls.' Motion at 20-21.  But Plaintiffs themselves state that they already knew "that Cardporn was key to [Kenneth Goldin] reversing course and withdrawing the card" and that Goldin had "expressly credited Cardporn in withdrawing the card for all his behind-the-scenes work[.]" *Id.* at 17.  Further, although Plaintiffs state that "Goldin's answers to interrogatories indicate that documents and communications produced would reveal the identity of [the] images[,]" they acknowledge that "[t]he non-party discovery shows . . . that the purported image with expanded metadata originates from buybuymj [another online hobby member] and was sent by buybuymj to Cardporn." *Id.* at 13, 14.  Finally, Plaintiffs make no mention of Defendants' production of call logs showing telephone calls between Goldin and Cardporn during the relevant time period, both before and after Goldin pulled the LeBron RPA Card from the auction.  Defs.' Opp., Ex. 3 (call logs).  That Plaintiffs have not received any *written* communications they believe exist does not preclude them from proceeding under their theory of collusion between Kenneth Goldin and Cardporn.  Therefore, on this record, the Court finds that Plaintiffs have not established prejudice.

    2.    <u>Rule 37(e)(2) Sanctions</u>

Plaintiffs have also failed to prove the requisite intent necessary to obtain the more severe sanctions available under Rule 37(e)(2).  "Where spoliation of ESI occurs, the Court may in its discretion issue sanctions pursuant to Rule 37(e)(2) 'only upon finding that the party acted with the intent to deprive another party of the information's use.'" *Manning*, 2021 WL 3557582, at *8 (quoting Fed. R. Civ. P. 37(e)(2)).  The moving party bears the burden of proving intent.  *Id.* "Because courts are unable to examine a party's head to confirm whether they acted in bad faith,

12

courts look to circumstantial evidence to determine intent." *Bistrian*, 448 F. Supp. 3d at 475 (cleaned up). Such circumstantial evidence can include the timing of the destruction, the method of deletion, selective preservation, and the spoliating party's own destruction and preservation policies. *Id.* at 475-76. Nonetheless, "the mere fact that some information was preserved and some was not does not necessarily amount to suspicious selective preservation" sufficient to demonstrate intent. *Id.* at 476-77. Moreover, "[a] showing of negligence or even gross negligence will not do the trick." *Two Canoes LLC*, 2024 WL 2939178, at *10. Ultimately, "[i]t is the movant's burden to demonstrate that the spoliating party acted with the intent to deprive." *Id.*

Here, even if the evidence had existed, Plaintiffs offer insufficient support for their contention that Defendants deleted or withheld that evidence to intentionally deprive Plaintiffs of its use. Plaintiffs suggest that because only these two categories of communications have not been produced, while "everything else has been produced," then "[t]he only logical conclusion is that these documents were either intentionally 'lost' or are being concealed." Pls.' Mot. at 19-20. That argument, however, relies on an illogical inference. As noted above, Defendants produced call logs, suggesting that many of the communications between Goldin and Cardporn during the relevant time period were oral, not written communications. Defs.' Opp., Ex. 3 (call logs). Moreover, even accepting Plaintiffs' assertion at face value, "the mere fact that some information was preserved and some was not does not necessarily amount to suspicious selective preservation." *Bistrian*, 448 F. Supp. 3d at 476-77. Beyond this assertion, Plaintiffs provide no factual support to warrant a determination of bad faith. "While the Court 'has discretion to draw inferences from the record on a party's intent, it strays beyond the bounds of its discretion when . . . there is no factual basis to do so.'" *Manning*, 2021 WL 3557582, at *10 n.6 (quoting *Bull*, 665 F.3d at 74).[4]

---

[4] Even if the Court were to hold that Defendants intentionally deprived Plaintiffs of the spoliated communications, Rule 37(e)(2) does not require a court to impose any of the sanctions

13

And "[w]hile a court may infer that a party acted with an intent to deprive on the basis of circumstantial evidence . . . here, the presented evidence is capable of more than one interpretation, and this Court will not make a finding of intent to deprive on the basis of suspicion alone." *Lokai Holdings LLC v. Twin Tiger USA LLC*, No. 15-9363, 2018 WL 1512055, at *16 (S.D.N.Y. Mar. 12, 2018).

## CONCLUSION

For the foregoing reasons, Plaintiffs' Motion for Sanctions Due to Spoliation of Evidence is **DENIED**. An appropriate Order shall follow.

s/Elizabeth A. Pascal<br>
ELIZABETH A. PASCAL<br>
United States Magistrate Judge

cc:  Hon. Karen M. Williams, U.S.D.J.

DATE:  10/29/2025

---

listed in the rule.  *See* Fed. R. Civ. P. 37(e)(2), advisory committee's note to 2015 amendment ("Finding an intent to deprive another party of the lost information's use in the litigation does not require a court to adopt any of the measures listed in subdivision (e)(2).").